APPEAL OF W. C. ARTHURS.

Docket No. 2468.   Submitted November 2, 1925.   Decided January 19, 1926.

Value as of March 1, 1913, of shares of stock, determined for purpose of ascertaining loss on sales.

*Irvin V. Barth, Esq.*, for the taxpayer.
*Briggs G. Simpich, Esq.*, for the Commissioner.

Before STERNHAGEN, LANSDON, and ARUNDELL.

This is an appeal from the determination of additional income taxes for the calendar year 1919 in the amount of $15,127.54. The deficiency arises from the disallowance of certain claimed losses on the sale of stock in various corporations. The position of the Commissioner is that the stock had no value on March 1, 1913, and, consequently, no deductible loss was sustained.

FINDINGS OF FACT.

1. The taxpayer purchased, either during the year 1903 or 1904, 200 shares of stock in the Lumber Mineral Co., of Arba, Miss., for which he paid $20,450. These shares were sold in 1919 for $10. The Lumber Mineral Co. was in the business of logging and sawing timber into lumber and marketing same. It owned large blocks of standing timber, a logging railroad, a mill, and the general appurtenances necessary for the operation of a lumber plant. The company was in active operation until 1916, when its mill was destroyed by fire. Due to the difficulty in securing new machinery, the high cost of the same and the scarcity of labor, the company did not

rebuild its plant, but instead liquidated its assets to the extent of selling its logging road, its standing timber, and the lumber theretofore manufactured by it. The company has not yet dissolved and still owns certain logged-off land. On March 1, 1913, it was a going concern in good financial condition and had a surplus in excess of $50,000. The shares of stock owned by the taxpayer on March 1, 1913, were worth an amount not less than that paid for them by him.

2. On April 12, 1907, the taxpayer purchased 40 shares of stock in the E. W. Gates Lumber Co., of Yellow Pine, Ala., at a cost of $5,000. He sold these shares of stock in 1919 for $10. On February 28, 1913, the E. W. Gates Lumber Co. had assets considerably in excess of the par value of the stock of the company, after allowing for all outstanding liabilities. The shares of stock owned by the taxpayer on March 1, 1913, were worth an amount not less than that paid for them by him.

3. The taxpayer acquired in July, 1906, 23,750 shares of stock in the Montana Consolidated Gold Mining Co. of the par value of $1 each, for which he paid $10,000. These shares of stock were sold during the year 1919 for $10. The mine of the corporation was located at Jardine, Mont. The taxpayer received no dividends on the stock after the year 1908. On March 1, 1913, the mine was shut down because of the inability of the company successfully to operate it, and in May, 1913, the entire property of the company was sold under foreclosure proceedings by the sheriff. Thereafter, the company had no assets whatever, except the bare right to redeem the property sold by the sheriff within one year after it was sold. The shares of stock owned by the taxpayer in the Montana Consolidated Gold Mining Co. had no fair market value on March 1, 1913.

4. On February 11, 1907, the taxpayer acquired 400 shares of stock in the Central Life Securities Co. for $5,000. A liquidating dividend of $340 was received. The taxpayer, during the year 1919, sold his stock in this corporation for $10. The stock in the Central Life Securities Co. was sold to the public by Rhodus Brothers of Chicago, who failed to account properly for the money received by them from the stock sales. Suit was brought against Rhodus Brothers some time prior to March 1, 1913. A judgment was thereafter obtained, but no money was ever collected on the judgment. Prior to March 1, 1913, the company had ceased to operate because of its financial embarrassment as a result of the peculations of Rhodus Brothers. The shares of stock owned by the taxpayer in the Central Life Securities Co. had no fair market value on March 1, 1913.

5. The taxpayer purchased on April 18, 1907, 25 shares of the preferred and 25 shares of the common stock of the Harvell Jewelry

Co., for which he paid $5,000. The taxpayer sold this stock in the Harvell Company in 1919 for $10. The Harvell Jewelry Co. had places of business located in Litchfield, Mount Vernon, and Gillespie, Ill. On March 1, 1913, the affairs of the Harvell Jewelry Co. were being handled by a trustee in bankruptcy. The bankruptcy proceedings were finally wound up on June 20, 1917. The taxpayer received nothing by way of distribution from the trustee. The shares of stock of the taxpayer in the Harvell Jewelry Co. had no fair market value on March 1, 1913.

6. The taxpayer purchased on July 17, 1907, 10 shares of stock in the T. B. Arnold Supply Co. for $1,000. He sold this stock in 1919 for $1. The company was engaged as a broker in selling railroad supplies, and the success of the business was entirely dependent on the initiative of T. B. Arnold. The company never made money and never paid dividends. Arnold died in December, 1913. Some months prior thereto he ceased to operate this business and went into another business. The corporation itself ceased to exist at or about that date. The shares of stock owned by the taxpayer had no fair market value on March 1, 1913.

7. On June 16, 1909, the taxpayer acquired 1,000 shares of the Colorado Land, Loan & Live Stock Co. at a cost of $1,000. This stock was sold during 1919 for $2. The taxpayer conceded at the hearing that he could not prove the March 1, 1913, value of his shares of stock in the Colorado Land, Loan & Live Stock Co.

8. On November 19, 1906, the taxpayer purchased 2,000 shares of stock in the Anglo Mexican Mining Co. at a cost of $2,000. This stock was sold in 1919 for $2. The taxpayer conceded at the time of the hearring that he could not establish the March 1, 1913, value of the stock in this company.

9. The taxpayer on June 8, 1908, purchased 10,000 shares of stock in the Black Eagle Mining & Leasing Co., for which he paid $1,000. He sold this stock in 1919 for $1. The taxpayer conceded at the hearing that he could not establish the March 1, 1913, value of these shares of stock.

10. The taxpayer acquired on March 20, 1907, 5,000 shares of stock in the American Venture Corporation, for which he paid $1,000. He sold this stock in the year 1919 for $1. The taxpayer conceded at the hearing that he could not establish the March 1, 1913, value of these shares of stock.

11. The taxpayer acquired on December 1, 1904, 500 shares of stock in the Wolverine & Buckeye Oil Co., for which he paid $2,456. The stock was sold in the year 1919 for $5. The taxpayer conceded at the hearing that he could not establish the value of his shares of stock in that corporation on March 1, 1913.

DECISION.

The deficiency should be computed in accordance with the fore-going findings of fact and the following opinion. Final determination will be settled on 15 days' notice, in accordance with Rule 50.

OPINION.

ARUNDELL: This case involves questions of fact, viz, the value on March 1, 1913, of various securities bought by the taxpayer prior to that date and sold in the taxable year at less than cost.

At the hearing the taxpayer conceded that he could not establish the value on March 1, 1913, of the shares discussed in paragraphs 7, 8, 9, 10, and 11 of the findings of fact.

The uncontradicted evidence produced by the taxpayer was that the shares owned by him in the Lumber Mineral Co. and the E. W. Gates Co., were, on March 1, 1913, worth an amount not less than that which the taxpayer paid for them. It is true that this stock was closely held and there is no evidence of actual sales. In the absence of sales, it is entirely proper to examine into the value of the assets and the amount of the company's earnings over a period of years, and, in view of this and all other evidence before us, determine what is the fair market value of shares of stock in a corporation. The evidence introduced in this case, we think, warrants a finding that the shares of stock held by the taxpayer in the Mineral Lumber Co. and the E. W. Gates Co. were, on March 1, 1913, worth an amount not less than the cost.

It is the taxpayer's contention that the value of the shares mentioned in paragraphs 3, 4, 5, and 6 of the findings of fact is established as of March 1, 1913, by proof of their cost, coupled with his testimony that he had no reason to believe on that date they were worth less than what he paid for them. In other words, it is argued that the law indulges in a presumption of the continuing existence of an established fact, and the purchase price of the shares having established their value as of that time, the same value should be presumed to obtain at a later date in the absence of any showing of a condition affecting that value. The only evidence offered being that of the taxpayer, it is argued that the cost price must be accepted as the March 1, 1913, value of the shares in controversy. The taxpayer overlooks the fact, however, that the presumption of continuity of value may be rebutted as well by the cross examination of the plaintiff as by affirmative evidence offered by the defendant. This, we think, has happened in this instance. The plant of the Montana Consolidated Gold Mining Co., in which Arthurs owned 23,750

shares on the sale of which he now claims a loss, was shut down on March 1, 1913, due to financial difficulties. The company had not paid dividends for a number of years prior thereto. As a result of foreclosure proceedings, all of the assets were sold by the sheriff within two or three months after March 1, 1913, and it is a fair inference that these proceedings were in process or at least imminent on that date. The Central Life Securities Co. had, prior to March 1, 1913, ceased to operate, and the Harvell Jewelry Co. was, on March 1, 1913, in the hands of a trustee in bankruptcy. The evidence as to the value of the stock in the T. B. Arnold Supply Co. was of the same tenor and is equally unconvincing. One would indeed be easily persuaded were he to accept the bare statement of the taxpayer that the shares were, on March 1, 1913, worth the price paid for them, as establishing proof of that fact, when the evidence shows that the companies were on that date either in the hands of a trustee in bankruptcy or had ceased to operate as going concerns.

Section 202 of the Revenue Act of 1918 provides that " for the purpose of ascertaining the　*　*　*　loss sustained from the sale or other disposition of property　*　*　*　the basis shall be　*　*　* in the case of property acquired before March 1, 1913, the fair market price or value of such property as of that date." The provision is a limitation on the actual loss that would otherwise be deductible. *United States* v. *Flannery*, 268 U. S. 98. It must follow that no loss can be allowed upon the sale of the shares which on March 1, 1913, had no fair market value.